## KOUBA v. RENZENBERGER, INC., et al.

### Exhibits to Notice of Removal

1.   Summons, Complaint and Certificate of Compulsory Arbitration

2.   Notice to Adverse Party of Removal of Civil Action to Federal Court

3.   Defendants' Notice to State Court of Removal of Civil Action to Federal Court

# EXHIBIT 1

Albert Walter Kouba - Plaintiff
515 West Miracle Mile
Tucson, Arizona 85705
Phone – 520-437-4420
Representing Self, in propria persona

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF PIMA

| | | |
|---|---|---|
| **ALBERT WALTER KOUBA,** | ) | **C2010-0988** |
| **PLAINTIFF,** | ) **COURT NO. _____** | |
| **VS.** | ) **ACTION AT LAW FOR** | |
| | ) **LOSS OF WAGES AND** | |
| **RENZENBERGER, INC., &** | ) **SEXUAL HARASSMENT &** | |
| **WILLIAM M. SMITH,** | ) **SEXUAL DISCRIMINATION** | |
| **INDIVIDUAL; & PHIL SIMCO.,** | ) | |
| **INDIVIDUAL; & KAREN M.** | ) | |
| **SEITTER, INDIVIDUAL; &** | ) **SUMMONS** | |
| **OTHER UNKNOWN** | ) | |
| **DEFENDANTS,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | *TBA Div S* |
| | ) | |
| **_____** | ) | |

**WARNING. THIS IS AN OFFICIAL DOCMENT FROM THE COURT
THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY.
IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR
LEGAL ADVICE.**

FROM THE STATE OF ARIZONA TO _Renzen Baer, Inc_
_William M. Smith_
_Karen M. Seitter_
_Phil Simco_

1. A lawsuit has been filed against you. A copy of the lawsuit (Complaint) and other related court paperwork is served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file a Response in writing with the Court, and you must pay the required filing fee. To file your Response, take or send the papers to: **Office of the Clerk of the Superior Court, 110 West Congress, Tucson, Arizona 85701**. Mail a copy of the Response to the Plaintiff, at the address listed on the top of this Summons.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Response must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If the papers were served on you outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS, not counting the day of service.

4. Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.


GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of Pima this _____ day of February, 2010

Clerk of the Superior Court

PATRICIA A. NOLAND

By _____
Deputy Clerk

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| **ALBERT WALTER KOUBA,** | ) |
|       **PLAINTIFF,** | ) **COURT NO.** (2015-0988 |
| | ) |
|    **VS.** | ) **ACTION AT LAW FOR** |
| | ) **LOSS OF WAGES AND** |
| **RENZENBERGER, INC., &** | ) **SEXUAL HARASSMENT &** |
| **WILLIAM M. SMITH,** | ) **SEXUAL DISCRIMINATION** |
| **INDIVIDUAL; & PHIL SIMCO.,** | ) |
| **INDIVIDUAL; & KAREN M.** | ) |
| **SEITTER, INDIVIDUAL; &** | )     **COMPLAINT** |
| **OTHER UNKNOWN** | ) |
| **DEFENDANTS,** | ) |
| | ) |
|     **DEFENDANTS.** | ) |
| | ) |
| _____ | ) |

COMES NOW ALBERT WALTER KOUBA, PLAINTIFF, address of 515 West

Miracle Mile, Tucson, Arizona 85705, and brings this civil action at law for loss of

wages and sexual harassment and sexual discrimination against DEFENDANTS

RENZENBERGER, INC, address of P. O. Box 14610 , Lenexa, Kansas  66285 and the

INDIVIDUALS of WILLIAM M. SMITH, PHIL SIMCO and KAREN M. SEITTER,

all 3 reached at the same address of RENZENBERGER, INC. at P. O. Box 14610,

Lenexa, Kansas 66285.

## COUNT I – FRAUD, LOSS OF OVERTIME WAGES

PLAINTIFF alleges as follows:

DEFENDANT RENZENBERGER is a Kansas corporation doing business in the

State of Arizona and is legally responsible for paying wages to employees living in

Arizona and comes under the jurisdiction of the wage laws of Arizona.

RENZENBERGER provides railroad crew transportation services for Union Pacific

Railroad out of Tucson, Arizona where PLAINTIFF was employed. PLAINTIFF was

employed by RENZENBERGER from about September 3, 2008 to September 21, 2009.

DEFENDANT SMITH is President of RENZENBERGER. DEFENDANT SIMCO

is Vice President of RENZENBERGER. DEFENDANT SEITTER is Executive Vice

President of RENZENBERGER. This action at law is brought against these 3 employees

of RENZENBERGER as INDIVIDUALS and maybe other UNKNOWN

DEFENDANTS because they profited as INDIVIDUALS from stealing, robbing,

and willfully frauding PLAINTIFF and many other employees by not paying

PLAINTIFF and others for overtime wages.

In 2007-2008, RENZENBERGER was sued in a CLASS ACTION for overtime

2

wages and it settled and did not go to trial. RENZENBERGER paid millions of dollars to

over 6,000 past and present employees. In the early part of year 2009,

RENZENBERGER paid past and present employees for loss of overtime wages.

However, PLAINTIFF and others who were hired after the start of the CLASS

ACTION were never informed or contacted to be a part of the CLASS ACTION. But

PLAINTIFF,  from about September 28, 2008 to December 20, 2008, had accumulated

about 76 hours of overtime wages, 76 hours over 40 hours in a week, and PLAINTIFF

was paid only straight time of hourly rate, not at the rate of overtime for hours over 40

hours a week at the rate of 1 and ½ hourly rate.

When PLAINTIFF first started for RENZENBERGER, September 3, 2008, it was

the policy of the company that PLAINTIFF, as a shuttle driver, could work as high as 70

hours per week, but would be paid straight time, hour rate for all 70 hours in each week.

Months later in 2009, after RENZENBERGER had paid the CLASS ACTION,

RENZENBERGER notified employees that in the future PLAINTIFF and other

employees would be allowed to only work 48 hours per week, 40 hours to be paid as

regular hourly rate and the other 8 hours in the week would be paid the overtime wages

according to law at 1 and ½ hourly rate.

However, RENZENBERGER having settled the CLASS ACTION, paying millions of dollars to over 6,000 Plaintiffs of the CLASS ACTION, having frauded those 6,000 plus employees out of overtime wages, RENZENBERGER changed the future policy of allowing employees to work 48 hours per week, and in later months of 2009, did pay employees for overtime for any hours beyond 40 hours, allowing up to 8 hours per week of overtime wages.

But DEFENDANTS KNOWING, WITH MALICE, WILLFULLY, STOLE, ROBBED, FRAUDED PLAINTIFF (not included in the CLASS ACTION), who was a new employee and had worked about 76 hours of overtime when first employed and before RENZENBERGER started paying for overtime under the new company policy of allowing PLAINTIFF to work only 48 hours per week, only paid PLAINTIFF straight time of the hourly rate for those 76 hours of overtime rather than the 1 and ½ hourly rate required by wage laws. RENZENBERGER pocketed the wages owed to PLAINTIFF for overtime wages, WITH MALICE, WILLFULLY frauded PLAINTIFF.

The owners of RENZENBERGER and the top corporate officers, some who are probably owners of RENZENBERGER, the INDIVIDUAL DEFENDANTS did profit as individuals, as they were able to pay themselves high wages and increased wages and

4

benefits by putting the wages owed to PLAINTIFF and other employees in their own pockets. They made corporate decisions to fraud PLAINTIFF by not paying him owed overtime wages, the INDIVIDUAL DEFENDANTS, and maybe other UNKNOWN DEFENDANTS, did profit as INDIVIDUALS from the misery of PLAINTIFF by stealing his wages with malice, willfully frauded PLAINTIFF out of overtime wages.

On September 30, 2009, PLAINTIFF wrote RENZENBERGER about his loss of wages for overtime and other wages lost for different reasons, and told how their management employee, Jacqueline Myers, was responsible for sexual harassment and sexual discrimination against PLAINTIFF.

PLAINTIFF received a reply from RENZENBERGER thru Karen M. Seitter, as Executive Vice President, a letter dated October 7, 2009. It was admitted PLAINTIFF was owed about $340 for the overtime owed to PLAINTIFF and RENZENBERGER was willing to pay PLAINTIFF $400. But PLAINTIFF had to sign papers discharging RENZENBERGER and all owners and corporate officers harmless for any claims of any wage claims and the AGREEMENT said PLAINTIFF had to admit he was not entitled to the consideration of the $400.

PLAINTIFF COULD NEVER ADMIT TO SUCH FOOLISHNESS AND INSULT.

5

And PLAINTIFF has other claims to loss wages that are included in the other COUNTS
filed in this action at law.

PLAINTIFF does not accept the AGREEMENT of RENZENBERGER as he
believes a jury should consider punitive damages for the arrogant, mean attitude of all
the DEFENDANTS, as with malice, did WILLFLLY fraud PLAINTIFF out of overtime
wages when they had already paid over 6,000 employees for overtime, paying out many
millions of dollars, yet refusing to pay PLAINTIFF amounts far less than the millions
they have already paid on the CLASS ACTION.

It was admission by DEFENDANTS they had to pay overtime wages over 40 hours
per week when they started to pay for future overtime wages of allowing drivers to put in
48 hours per week, paying the extra 8 hours beyond 40 hours as overtime wages at the
hourly rate of 1 and ½.

The letter of October 7, 2009 from RENZENBERGER did speak to the issue
PLAINTIFF raised in his letter of September 30, 2009 of sexual harassment and sexual
discrimination by one of RENZENBEREGER management against PLAINTIFF, and the
company said they would investigate it and implied they would get back to PLAINTIFF.
But at the time of the filing of this action at law, PLAINTIFF has heard nothing from

6

RENZENBERGER to that issue, three (3) months later.

## COUNT II – FRAUD, LOSS OF WAGES, NOT PAID FOR WORK DONE.

COUNT I is incorporated into COUNT II, all part of the entire action at law.

PLAINTIFF alleges as follows:

PLAINTIFF was not paid for work, services rendered to RENZENBERGER by

PLAINTIFF. PLAINTIFF was a van driver to shuttle railroad crews across the Tucson

district for Union Pacific Railroad. PLAINTIFF and all other drivers for

RENZENBERGER across the Nation were required to get the key to the van vehicle at

the start of every road trip and go thru an examine of the vehicle, inspection, and to also

take time to enter in information into the van computer that forwarded information to

RENZENBERGER headquarters that tracked all road information whereby drivers were

paid. PLAINTIFF was not paid for this work, services rendered to RENZENBERGER, as

the clock started at the scheduled pick up time to pick up railroad crews.

PLAINTIFF and all drivers across the Nation could put in 15 minutes to 20 minutes

of FREE time to RENZENBERGER, as PLAINTIFF NEVER was paid for this work,

services given to RENZENBERGER, and the time sheets the company worked from had

the wages of PLAINTIFF starting at the pick-up time of the railroad crews.

7

At most safety meetings drivers for RENZENBERGER in the Tucson, Arizona office would raise the issue the drivers were losing wages for time not paid by the company for all the time drivers put in for the van inspection and time for computer entry of data that was REQUIRED by DEFENDANT RENZENBERGER, the employer.

The amount owed to PLAINTIFF would have to be determined during the trial as RENZENBERGER's records would need to be obtained as to the correct number of days worked by PLAINTIFF. But, using 15 minutes each day for 340 days at about $8.50 per hour, the amount owed to PLAINTIFF, minus any interest and punitive damages would be at least $700.

Then part of this COUNT II of willful frauding PLAINTIFF out of wages for work done and not paid for is at the end of each road trip in which PLAINTIFF and other drivers were not paid for work, services rendered when PLAINTIFF was required to fuel, gas up the vehicle at the end of the road trip.

There were days when PLAINTIFF may have been paid for fueling the van vehicle at the end of the road trip that was determined by how PLAINTIFF may have entered data into the computer in the van, such information forwarded to the corporate office in Kansas.

8

However, there were days when PLAINTIFF returned from a road trip and he had to fuel the vehicle in which he was not paid for this required work.  Any amount owed for the loss of wages would have to be determined during the trial from the work record of PLAINTIFF as to time work and if time worked was paid when fueling the van at the end of the road trip.

Thus, PLAINTIFF was willfully frauded, with malice, not paid for work done by PLAINTIFF at the start and end of every road trip.

And the INDIVIDUAL DEFENDANTS are a part of this COUNT II, as these INDIVIDUUALS MADE DECISIONS TO NOT PAY PLAINTIFF FOR WORK DONE FOR THE BUSINESS, with malice and fraud, as these INDIVIDUALS benefited personally to pay their high wages and benefits, getting increases in many ways in wages and benefits.

And one of the management of RENZENBERGER, Larry Parnell, came to Tucson, Arizona to speak with the road drivers and other employees, in 2009, when PLAINTIFF was employed by RENZENBERGER and PLAINTIFF was at the meeting, and to the issue of the drivers not being paid for work done at the start of every road trip, and not being paid for fueling the vans at the end of the trips, Larry Parnell admitted the drivers

were not being paid to fuel the vans at the end of the road trips when he told all drivers if they did not want to fuel the vans on their own time, he said he could have a person to fuel up each vehicle if drivers did not want to do this for free, but he never did that.

The total amount of consideration owed to PLAINTIFF, without interest and punitive damages, under this COUNT II, would have to be learned from RENZENBERGER'S payroll records for PLAINTIFF during the trial.

### COUNT III – FRAUD, LOSS OF WAGES FOR ON CALL TIME

COUNTS I & II are incorporated into COUNT III, all a part of this action at law.

PLAINTIFF alleges as follows:

When PLAINTIFF first worked for RENZENBERGER he was working 7 days a week. Later on PLAINTIFF worked 6 days a week, then 5 days a week, and then back to 6 days a week. All company over the road drivers worked according to how busy the railroad was and according to the number of drivers that were working, as if the number of drivers was down from people quitting or being fired, that affected the remaining drivers as to how many days a week they worked.

PLAINTIFF was on call for each day of work whether PLAINTIFF worked or not. PLAINTIFF was in effect working for RENZENBERGER by having to be tied to the

10

phone, could not plan to do anything on his own time because anytime during each day

on call PLAINTIFF could be contacted by RENZENBERGER to report for an over the

road trip.

PLAINTIFF, while on call each day, say on schedule to work 6 days a week,

PLAINTIFF may work a road trip or may not work a road trip, and yet, not doing an

actual road trip, required to be ON CALL to work, was not paid for being on call.

RENZENBERGER reports in its employee handbook it has drivers using 1,500 vans

in 23 states and in over 150 locations. Tucson, Arizona is one of the 150 locations, and

before PLAINTIFF worked for RENZENBERGER allowed the road drivers to use and

take home a van when not driving a road trip in the TUCSON area.. This was part of the

compensation the company business gave to each road driver, as this saved money for

fuel and wear and tear on their own vehicle.

PLAINTIFF lived 9 miles, one way from the yard where the company vans were

stored, next to the railroad office where railroad crews would be picked up. A round trip

from home to the yard location for the vans would be 18 miles. The IRS allows a

deduction for use of vehicle of about 50 cents a mile. Thus PLAINTIFF would save $9

each day when called out for a road trip had he been given a company van  to travel to

11

work from home and back.

But when PLAINTIFF started work for RENZENBERGER it had stopped allowing

each over the road drivers to use a van to travel from home to work and back home in the

Tucson, Arizona location.

However, across the Nation where RENZENBERGER has other locations in the 23

states of operation, RENZENBERGER gave vans to over the road drivers to use to travel

back and forth from work, not needing to use their own personal vehicles.

So, in other locations in other states RENZENBERGER was saving those drivers

many dollars of expense in allowing them drivers to use a company van for personal use

to travel to and from work, but the drivers in the Tucson, Arizona location, they and

PLAINTIFF had to pay such expense from their own pockets on days they were on call

for. That is a loss of income, compensation for PLAINTIFF. If PLAINTIFFdrove 340

days on road trips, at $9.00 per day for driving expense of using his own vehicle rather

than having the use of a company van for being on call, that is an amount of $3,060 that

is a loss of income compensation to PLAINTIFF. This is discrimination of loss of money

when drivers in other locations were allowed use of a company van while on call when

PLAINTIFF was denied the same benefit.

12

The true and accurate number of days PLAINTIFF was working on a road trip would have to be determined from the payroll records of PLAINTIFF from RENZENBERGER in trial.

PLAINTIFF is also owed money for loss of wages while on call for each day PLAINTIFF was scheduled to work, as on many days while on call, PLAINTIFF had no road job, no wages for that day. PLAINTIFF was tied to the phone to being on call, not able to take time to do his own thing, but could at any time during the day on call could get a call from the company to report to work for a road trip.

Then on other days scheduled to work, on call for all 24 hours, PLAINTIFF would get a road trip that was for only 4 hours, and then return home to remain on call for the rest of the day, paid only for the 4 hours.

A jury will determine if PLAINTIFF had a loss of wages while PLAINTIFF had no income for each day scheduled to work, yet on call, scheduled to work, but had no road trip, losing out on the average, national work day of 8 hours a day.

And for each day on call for each scheduled work day, PLAINTIFF worked only a 4 hour road trip, a jury will determine if PLAINTIFF had a loss of the other 4 hours PLAINTIFF did not work during each 24 hour work day, but was yet still required to be

13

on call for the rest of the work day after working only 4 hours.

For the loss of wages under this COUNT III, the INDIVIDUAL DEFENDANTS are held responsible, as thru their efforts to willfully fraud, rob, cheat, steal the income from PLAINTIFF, as corporate officers and owners of the business, made decisions to not pay wages to PLAINTIFF on call,  so they all benefitted as individuals, as they put the owed wages of PLAINTIFF in their own individual pockets for high wages, increasing their own income for pay increases or many ways to benefit, as individuals in many ways.

### COUNT IV – SEXUAL HARASSMENT AND SEXUAL DISCRIMINATION

COUNTS I, II, III are incorporated into COUNT IV.

PLAINTIFF alleges as follows:

This Court has jurisdiction under State law pertaining to harassment &discrimination in employment. This action is also filed under Federal Statute Title VII and ADA.

While PLAINTIFF was employed by RENZENBERGER in Tucson, Arizona, Jacqueline Myers was employed by RENZENBERGER as the Regional Manager. She hired PLAINTIFF and PLAINTIFF was required to attend a two (2) day training course that was located in Tucson, Arizona, dates of September 3-4, 2008.

During the training sessions, Jacqueline Myers walked up to PLAINTIFF while he

was sitting in his chair and Myers, a married woman, on her third husband, put her body

on PLAINTIFF and her hands on PLAINTIFF's neck, rubbed her breasts on the head of

PLAINTIFF. And during the training session she also put her hands on another man

employee while he was standing, from the back side, she put her hands on his neck and

started to rub his neck, and the man turned in anger, upset that how dare she put her

hands on him, and then Myers said to the employee, "**don't get excited**, I'm married."

RENZENBERGER gives each employee its work handbook, and on pages 10-11 of

the revised edition of 08/01/09 it is clearly spelled out about sexual harassment and

sexual discrimination policy for which Jacqueline Myers knew fully well her actions

were wrong towards men employees, as the act of Myers of rubbing her body and breasts

on PLAINTIFF and what she did to the other man employee are evil, foul, dirty actions

by any married woman with another man, sexual advances to see the reaction, if possible

sex later on.

PLAINTIFF and the other man employee did not respond to the physical sexual

advances of Myers, and later days in the course of employment would bring a very

hostile work environment in the Tucson location for PLAINTIFF and others, as Myers set

out to make the work environment for PLAINTIFF and others unbearable from day to

15

day, as PLAINTIFF and others dreaded to be around Myers and preferred to never have

to see her or ever speak to her, preferring to speak to lower management.

Myers admitted to the employees in safety work meetings in Tucson that her

employer, RENZENBERER, was very aware of her foul and mean attitude, her "potty

mouth," as Myers told PLAINTIFF and others her own personal work file contained

filings of many complaints by other employees and even by higher management, of her

hostile attitude towards most employees in Tucson, of her rantings and screaming at

employees, breathing out threats to fire people, showing favoritism of certain employees

over others.

The work handbook of RENZENBERGER starts the wording under Anti-

discrimination & Harassment  Policy with these words, "<u>Renzenberger is committed to

providing a workplace free of discrimination and harassment</u>." That is not true as

RENZENBERGER KNEW OF THE HOSTILE WORK ENVIORNMENT THAT

THEIR REGIONAL MANAGER OF TUCSON HAD CREATED.

To show proof, evidence that RENZENBERGER was not interested in any

complaints of sexual harassment or discrimination of any of their management

employees towards other employees, in his letter of September 30, 2009, PLAINTIFF

16

wrote in his letter to RENZENBERGER, setting a "trap" to show and prove that

RENZENBERGER would not investigate any claims of sexual harassment or

discrimination by writing the following in the letter of September 30, 2009.

**"Jackie and another woman employee of Renzenberger are always touching men employees of Renzenberger in Tucson.** In safety meetings, Jackie walks around putting her hands on men, and another woman manager also wants to put her hands on men and rub them. They are required to keep their hands to themselves.

**And you can ask one of your men drivers in the yard and ask him if one of your women tried to force a kiss on him. His name is Harry. He told this to me and I was shocked. I said he was just making that up. He said to me, "I am a person who does not lie." "**

Three (3) months have gone by since PLAINTIFF wrote the words above to

RENZENBERGER stating how a present employee manager, who took the place of

Jacqueline Myers in Tucson, of her sexual actions against men and RENZENBERGER

never bothered to ask more questions of PLAINTIFF of such wrong doings by the present

woman manager for the Tucson area.

This present manager for RENZENBERGER was promoted higher in taking the

place of Jacqueline Myers when Myers was transferred out of the Arizona region. And

PLAINTIFF, in talking to men who were still working at Tucson for RENZENBERGER,

told how the present manager in Tucson is still trying to seduce men, as when men show

17

up at the trailer office in Tucson, the woman manager puts her hands on men, and trails her hands down their arms, and that is a sexual approach. And PLAINTIFF was also informed that the present woman manager again approached the man PLAINTIFF spoke of in the letter to RENZENBERGER, the company made aware of this sexual predator of men at work, had approached Harry a second time, trying to force another kiss on him.

Has RENZENBERGER fired this woman manager in Tucson? No, she was promoted instead ,after PLAINTIFF made RENZENBERGER aware of her being a forceful sexual predator of men in the work force of RENZENBERGER in the Tucson region.

Thus, RENZENBERGER has been an "enabler" of both Jacqueline Myers and the present woman manager in the Tucson region, responsible for the actions of these women.

As the COUNTS I, II, and III reveal, the only thing of importance to RENZENBERGERER is the "love of money," the root of all evil, as the evidence in this civil action at law will show to a jury of how the DEFENDANTS are willing to put up with woman sexual predators, not paid very well, not able to hire and employee people of high quality, since DEFENDANTS reduce the costs for the company by low paid woman managers, over look the sexual harassment and discrimination by Myers and the present woman manager for the Tucson region, enabling these woman managers to be

very bold with no fear of being fired, try to seduce men of the men employees, and when

such advances are refused, Myers started to harass PLAINTIFF, making threats about

once a month to fire PLAINTIFF, would scream at PLAINTIFF she did not care if

PLAINTIFF "pissed or shit," the words she screamed at PLAINTIFF. And in the last

safety meeting with all employees, also screamed at all she did not care if the employees

were paid so little in wages, and screamed at all the employees she did not care if they

"pissed or shit."

It was at this last safety meeting of employees that Myers screamed out at all the

employees of how when she worked as a road driver she was paid so little in salary by

her employer that she had to get food stamps to survive. She told the employees she had

no sympathy if they were paid so little by RENZENBERGER.

Jacqueline Myers used her position as a "boss" woman to make the lives of men

under her miserable, using the force of her position as "boss," trying to intimidate

PLAINTIFF and other men, even making one man cry in being so mean spirited towards

the grown man. She was a foul mouth woman, willing to talk filth in meetings.

RENZENBERGER was well aware of how the morale of the employees in the

Tucson region was so bad that most employees, men and woman, never wanted to be

19

near her and never wanted to speak to her on the phone.

PLAINTIFF HAS NEVER KNOWN of any woman management he has worked with to be more verbally abusive than Jacqueline Myers who created a very hostile work environment in the Tucson region, using her sex as a woman boss and to harass the PLAINTIFF and discriminated against PLAINTIFF MANY TIMES, as he did not accept her physical sexual advances.

For all these claims made against Jacqueline Myers, with DEFENDANT RENZENBERGER KNOWING OVER THE YEARS OF THE VERBAL, ABUSIVE NATURE OF Jacqueline Myers, enabled her in her abusive ways, allowed her to continue in her evil ways since she saved the company business so much money in her low wages, accepted her foul and low morals, PLAINTIFF sues DEFENDANT RENZENBERGER for $1,000,000 (one million dollars) for damages of sexual harassment and sexual discrimination and for a very hostile work environment.

PLAINTIFF DEMANDS A TRIAL BY JURY AND FOR THE JURY TO AWARD ONE MILLION DOLLARS ($1,000,000) PUNITIVE DAMAGES ON ALL FOUR (4) COUNTS.

Dated this 8th day of February, 2010

_____ Walt Kouba

Plaintiff, Albert Walter Kouba, in propria persona

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that he did mail a copy of this civil action at law to each of the

4 Defendants in separate mailing envelopes, mailed at the U.S. Post office in Tucson,

Arizona, sent by certified mail with return receipt requested, to the address of P.O. Box

14610, Lenexa, Kansas, 66285 on this 8th day of February, 2010.

_____

Plaintiff – Albert Walter Kouba



Albert Walter Kouba - Plaintiff
515 West Miracle Mile
Tucson, Arizona 85705
Phone -- 520-437-4420
Representing Self, in propria persona

FILED

10 FEB -8 PM 3: 24

PATRICIA A. NOLAND
CLERK, SUPERIOR COURT

BY_____ DEPUTY

JUD E. WHITNELL

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| **ALBERT WALTER KOUBA,** | ) |
| **PLAINTIFF,** | ) COURT NO. **C2010-0988** |
| **VS.** | ) **ACTION AT LAW FOR** |
| | ) **LOSS OF WAGES AND** |
| **RENZENBERGER, INC., &** | ) **SEXUAL HARASSMENT &** |
| **WILLIAM M. SMITH,** | ) **SEXUAL DISCRIMINATION** |
| **INDIVIDUAL; & PHIL SIMCO.,** | ) |
| **INDIVIDUAL;  & KAREN M.** | ) *TBA DIVS* |
| **SEITTER, INDIVIDUAL; &** | ) **CERTIFICATE ON** |
| **OTHER UNKNOWN** | ) **COMPULSORY** |
| **DEFENDANTS,** | ) **ARBITRATION** |
| | ) |
| **DEFENDANTS.** | ) |
| | ) |
| | ) |

TO: _Renzenberger, Inc., William M. Smith,_
Name of Defendants        _Phil Simco_
                          _Karen M. Seitter_

The undersigned certifies that the largest award sought by the complainant, including punitive damages, but excluding interest and costs does exceed the limits set by the Local Rules of this Court for compulsory arbitration, and further certifies that this case is not subject to compulsory arbitration, as provided by Rules 72 thru 76 of the Arizona Rules of Civil Procedure.

Date:     _2-8 2010_

_Walt Kouba_

Albert Walter Kouba - Plaintiff
515 West Miracle Mile
Tucson, Arizona 85705

# EXHIBIT 2

1   Christie L. Kriegsfeld; AZ Bar No. 022537
    ckriegsfeld@littler.com
2   LITTLER MENDELSON.
    A Professional Corporation
3   2425 East Camelback Road
    Suite 900
4   Phoenix, AZ  85016
    Telephone:   602.474.3600
5   Facsimile:   602.957.1801

6   Attorneys for Defendants
    Renzenberger, Smith, Simco and Seitter
7

8                    SUPERIOR COURT OF THE STATE OF ARIZONA
9                              COUNTY OF PIMA
10

11  ALBERT WALTER KOUBA,                    Case No. C2010-0988
12              Plaintiff,                  **NOTICE TO ADVERSE PARTY OF**
13  v.                                      **REMOVAL OF CIVIL ACTION TO**
                                            **FEDERAL COURT**
14  RENZENBERGER, INC., & WILLIAM M.
15  SMITH, individual; & PHIL SIMCO,
    individual; & KAREN M. SEITTER,
16  individual, & other unknown defendants,

17              Defendants.

18

19  **TO PLAINTIFF ALBERT WALTER KOUBA** :

20          **PLEASE TAKE NOTICE** that on March 15, 2010, Defendants filed a Notice of

21  Removal of Action Under 28 U.S.C. § 1441(a) (Diversity) and 28 U.S.C. § 1441(b) (Federal

22  Question) in the United States District Court of Arizona, attached hereto as Exhibit 1.

23          A copy of the Notice of Removal was filed and served contemporaneously herewith.

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602 474 3600

1   DATED this ___15th___ day of March, 2010

2

3

4   _Christie L. Kriegsfeld_
    Christie L. Kriegsfeld
5   LITTLER MENDELSON., P.C.
    Attorneys for Defendants
6   Renzenberger, Smith, Simco and Seitter

7

8   ORIGINAL filed and COPY of the
    foregoing mailed this ___15th___ day
9   of March, 2010, to:

10  Albert Walter Kouba
    515 West Miracle Mile
11  Tucson, AZ 85705
    *Pro Per* Plaintiff
12

13  _[signature]_

14  Firmwide:94383052.1 062483.1001

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602 474 3600

-2-

EXHIBIT 3

1   Christie L. Kriegsfeld; AZ Bar No. 022537
    ckriegsfeld@littler.com
2   LITTLER MENDELSON.
    A Professional Corporation
3   2425 East Camelback Road
    Suite 900
4   Phoenix, AZ 85016
    Telephone:   602.474.3600
5   Facsimile:   602.957.1801

6   Attorneys for Defendants
    Renzenberger, Smith, Simco and Seitter
7

8                    SUPERIOR COURT OF THE STATE OF ARIZONA

9                                COUNTY OF PIMA

10

11
    ALBERT WALTER KOUBA,                    Case No. C2010-0988
12
                    Plaintiff,              **DEFENDANTS' NOTICE TO
13                                          STATE COURT OF REMOVAL
    v.                                      OF CIVIL ACTION TO FEDERAL
14                                          COURT**
    RENZENBERGER, INC., & WILLIAM M.
15  SMITH, individual; & PHIL SIMCO,
    individual; & KAREN M. SEITTER,
16  individual, & other unknown defendants,

17                  Defendants.

18

19  **TO THE CLERK OF THE SUPERIOR COURT OF ARIZONA, COUNTY OF PIMA:**

20          **PLEASE TAKE NOTICE** that on March 15, 2010, Defendants filed a Notice of

21  Removal of Civil Action under 28 U.S.C. §§ 1331, 1332 and 1441(a) (diversity) and 1441(b)

22  (federal question) with the Clerk of the United States District Court for the District of

23  Arizona, Phoenix Division. A copy of said Notice of Removal is attached as Exhibit A.

24          **PLEASE TAKE FURTHER NOTICE** that the filing of said Notice of Removal

25  with the Clerk of this Court effects the removal of this action in accordance with 28 U.S.C. §

26  1446(d).

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602 474 3600

1    DATED this 15th day of March, 2010

2

3

4    _____
     Christie L. Kriegsfeld
5    LITTLER MENDELSON., P.C.
     Attorneys for Defendants
6    Renzenberger, Smith, Simco and Seitter

7

8    ORIGINAL filed and COPY of the
     foregoing mailed this 15th day of March,
9    2010, to:

10   Albert Walter Kouba
     515 West Miracle Mile
11   Tucson, AZ  85705
     *Pro Per* Plaintiff
12

13

14   Firmwide:94382854.1 062483.1001

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602 474 3600